IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:25CR401 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| EMILIO ALVAREZ PEREZ, | ) | UNITED STATES' OPPOSITION TO |
| | ) | DEFENDANT'S MOTION TO DISMISS |
| Defendant. | ) | THE INDICTMENT |
| | ) | |
| | ) | |
| | ) | |

Now comes the United States of America, through its counsel, David M. Toepfer, United States Attorney, and Kristen Rolph, Assistant United States Attorney, and respectfully submits this Opposition to the Defendant's Motion to Dismiss Counts 2, 3 and 4 of the Indictment. For the reasons explained below, this Court should deny the motion.

## I.  FACTS AND PROCEDURAL HISTORY

Defendant was arrested during a federal search warrant execution at AZZ Galvanizing on August 6, 2025.  Defendant was one of 24 illegal aliens, found to be working at AZZ Galvanizing, who were apprehended and detained. The search warrant was the result of a months-long investigation into AZZ Galvanizing and its employees. In April 2025, the Department of Homeland Security ("HSI") received a tip that AZZ Galvanizing was employing illegal aliens that were fraudulently using the identities of U.S. citizens, many of whom could not re-cite their assumed social security number or date of birth. The investigation leading up to the search warrant execution identified and confirmed several employees were working under assumed, fraudulent United States citizen identities.

The Defendant assumed the identity of Albert Ramos Moreno, a United States citizen. He assumed that identity by using Moreno's name, social security number ending in 9860, and Moreno's date of birth XX/XX/1983. On June 24, 2013, the Defendant signed the Form I-9, Employment Eligibility Verification, falsely claiming to be a U.S. citizen, using Albert Ramos Moreno's name and personal identifiers. By signing the Form I-9, Defendant attested, under penalty of perjury, that he was a U.S. citizen. When in fact, the Defendant is an illegal alien who is a citizen of Guatemala. He lied about his true identity, and his claim that he was a U.S. citizen, to conceal the fact that he was (and still is) in the United States illegally.

For the entire duration of his employment, the Defendant continued to represent himself as Albert Ramos Moreno and continued to use Moreno's social security number ending in 9860. The wage report for AZZ Galvanizing for the first quarter of 2025 shows that Defendant's assumed Moreno identity, social security number ending in 9860, received wages from AZZ Galvanizing. Demonstrating that the Defendant continued to conceal his true identity and also that he continued to fraudulently use and benefit from the use of the fraudulent social security number.

The Defendant is charged in a four count indictment with the following offenses: Count 1, Illegal Reentry of Removed Alien, in violation of 8 U.S.C. §§ 1326(a) and (b)(2); Count 2, False Claim to U.S. Citizenship to Engage Unlawfully in Employment, in violation of 18 U.S.C. § 1015(e); Count 3, Misuse of Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B); and Count 4, Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).  (Doc. 1: Indictment).  Defendant has moved to have Counts 2, 3 and 4 dismissed.[1]  (Doc. 14: Defendant's

---

[1] Several Defendants also charged as a result of the AZZ Galvanizing search warrant execution have filed Motions to Dismiss the Indictment alleging similar grounds. *See, United States v. Justo Amaya-Calles*, 5:25CR402-PAB; *United States v. Felipe Pastor Hernandez*, 5:25CR467-JPC; *United States v. Diego Perez Lux*, 5:25CR469-PAG; *United States v. Victor Ramos-Santis*,

Motion to Dismiss the Indictment, PageID 43-52).  For the reasons stated below, the government respectfully asks the Court to deny Defendant's motion.

## II.    LAW AND ANALYSIS

### A.  The Statute of Limitations

For charging purposes, the statute of limitation begins to run at the commission of the crime as a general rule. In other words, the commencement of the period for the statute of limitations generally occurs at the point that all the elements of the crime have been completed. *Toussie v. United States,* 397 U.S. 112 (1970). The relevant statute of limitations states, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). In *Toussie v. United States*, the Supreme Court described the test for determining when the statute of limitations runs as follows:

> When deciding when the statute of limitations begins to run in a given case several considerations guide our decision. The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.

*Id* at 114-15. Classifying Title 18 U.S.C. 1015(e) as a continuing offense does not run afoul of the purposes of the statute of limitations as outlined in *Toussie*.  Ordinarily, a crime is complete once "every element of the crime has been accomplished." *Id* at 115; see also *United States v. Lutz*, 154 F.3d 581, 586 (6th Cir. 1998).

---

5:25CR403-CAB; and *United States v. Felix Pastor Perez*, 5:25CR466-DCN.

There is one important exception to the rule that the statute of limitations begins to run from the time that an offense is committed. Under the continuing offense doctrine, criminal acts that involve a prolonged course of conduct, the completion of which does not occur until all the conduct is over, may extend the otherwise applicable statute of limitations. *Id* at 115. The Supreme Court set out a two-prong test in *Toussie* to determine if an offense is a continuing offense, (1) "the explicit language of the relevant statute compels this conclusion, or", (2) "the nature of the offense charged is such that Congress must assuredly have intended that the offense be treated as a continuing one." *Id* at 115; See also *United States v. Del Percio,* 870 F.2d 1090, 1095 (6th Cir.1989). In order for an offense to qualify as a "continuing offense" under the first prong of the *Toussie* test, the statutory language must state that the offense is a continuing offense or indicate when the statute of limitations begins to run. *Del Percio*, 870 F.2d at 1095-96. To qualify under the second prong, "Congress must assuredly have intended that courts treat a violation of the statute at issue as a continuing offense. *Toussie*, 397 U.S. at 115. The hallmark of a continuing offense is that it endures beyond the initial illegal act, and that "*each day brings a renewed threat of the evil Congress sought to prevent*" even after the necessary elements to establish the crime have occurred" (emphasis added). *Id* at 122. In such cases, "Congress prohibited a course of conduct, not an act." *United States v Jones*, 533 F.2d 1387 (6th Cir. 1976).

After acknowledging the "tension between the purposes of the statute of limitations and the continuing offense doctrine" the Supreme Court was mindful to point out, "these considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*,

397 U.S. at 115. When the period specified in the continuing offense "spans the statute of limitations period, as in this case, the crime is not barred by the statute of limitations as long as the proscribed course of conduct continues into the limitation period." *Id.*

### B. Count 2, False Claim to U.S. Citizenship to Engage Unlawfully in Employment, is not time barred.

The Sixth Circuit has not addressed whether Title 18 U.S.C. § 1015(e) is a continuing offense for statute of limitation purposes. It doesn't appear any other Circuit has either. For the reasons the government will develop here, the government submits that Count 2 is a continuing offense and therefore not time barred. The government further submits that Defendant's concealment of his conduct charged in Count 2, tolled the statute of limitations until such time the concealment was discovered.

First, Count 2 is a continuing offense under the second prong of the *Toussie* test. The nature of this offense is such that Congress must assuredly intended it to be a continuing offense. *Toussie,* 397 U.S. at 115; See also *United States v. Del Percio,* 870 F.2d 1090, 1095 (6th Cir.1989). The nature of the offense that Congress intended to criminalize, and the statutory language used, supports treating this offense as a continuing offense. The pertinent statute, 18 U.S.C. § 1015(e) states,

> whoever knowingly makes any false statement or claim that he is, or at any time has been, a citizen or national of the United States, with the intent to obtain on behalf of himself, or any other person, any Federal or State benefit or service, or to engage unlawfully in employment in the United States…shall be fined under this title or imprisoned not more than five years, or both.

The words Congress used in the statute indicate this crime is a continuing one. The phrase "to engage unlawfully in employment" is not a singular event as defense would suggest. Engaging unlawfully in employment is an ongoing, continuous act. The conduct charged in Count 2 "endures

beyond the initial illegal act" as the Defendant engaged in employment unlawfully by fraudulently using the identity of a U.S. citizen, thereby concealing his true identity, and continued to do so for nearly twelve years. Undoubtedly, Congress sought to criminalize making a false claim to U.S. citizenship to unlawfully *engage* in employment. The "evil Congress sought to prevent" is the identity theft and fraud that is at issue here. Defendant did not falsely claim to be a U.S. citizen for merely one day to gain employment, that claim, and posture continued throughout his employment at AZZ Galvanizing. Each day "brought a renewed threat" as the Defendant continued to perpetrate the identity fraud every day he earned wages under the assumed identity and social security number. As the court stated in *Jones*, this illustrates an instance in which "Congress prohibited a course of conduct, not an act." *Jones*, 533 F.2d at 1390.

Second, the specific circumstances that form the conduct charged in Count 2 were concealed by the Defendant and therefore tolled the statute of limitations. Due to the Defendant's concealment, the statute of limitations was tolled until such time, through the exercise of diligence, that it was discovered. Under this rule, an individual who wrongfully conceals material facts, such as presenting an assumed identity, and thereby prevents discovery of his wrong or of the fact that a cause of action has accrued against him, is not permitted to assert the statute of limitations as a bar to an action against him, thus taking advantage of his own wrong, until the expiration of the full statutory period from the time when the facts were discovered or should, with reasonable diligence, have been discovered.

The defendants in *United States v. Del Percio*, "did not attempt to conceal the alleged violations from the NRC or otherwise preclude the government from discovering the alleged offenses." 870 F.2d 1090, 1097 (6th Cir. 1989). Thereby distinguishing that case in which the court concluded the statute at issue was not a continuing offense. Here, the Defendant actively concealed

his identity by claiming to be Albert Ramos Moreno from June 2013 through August 2025.

Because the Sixth Circuit has not analyzed this issue, the government will draw from analogous cases from other Circuits. In *United States v. Lazo-Rodriguez*, 569 Fed.Appx 103 (3rd Cir. 2014), the court analyzed a similar fact pattern in that, both Lazo-Rodriguez and Defendant Alvarez Perez, adopted a false identity. Now that case involved a different statute; however, the court's decision to toll the statute of limitations is well-reasoned and applicable here. In the event a defendant proffers a fictitious name, or adopts a false identity, or later uses a different name, that defendant has engaged in an act of affirmative deception. *Id* at 106. Importantly, the court stated, "just as that act impedes the Government's ability to detect a violation of § 1326, so too does it forfeit the right to charge the Government with constructive knowledge of that same violation for purposes of a limitations defense. As recognized by the First Circuit on similar facts, "[t]o hold otherwise would be to reward deceit by the alien and to encourage the withholding of information, and so the corruption of the deportation process." *Id* at 106-107, quoting *United States v. DeLeon*, 444 F.3d 41, 52 (1st Cir. 2006). The court ultimately concluded that the government cannot be charged with constructive knowledge of Lazo-Rodriguez's crime. *Id*. Likewise, the government in this case cannot be charged with constructive knowledge of the Defendant's crimes in 2013, when he entered the United States illegally and adopted a false identity to fraudulently claim he was a U.S. citizen. To find that the statute of limitations began running on a specific date in 2013, rewards the Defendant's crimes, and fails to recognize the ongoing nature of this offense and fraudulent use of the assumed identity.

Title 8 U.S.C. § 1326 does not explicitly list when the statute begins tolling, yet, several courts have found that the statute of limitations begins not when the illegal alien re-enters, but from the "found in" date when the alien's concealment is discovered. Similarly, the statutory

provisions at issue here, do not mention the statute of limitations, or when the limitations period begins to run.

If Defendant is arguing each separate "claim" to citizenship has to be a discrete act and charged with a single date of the claim, then Defendant is effectively arguing that the government could charge dozens of felonies, with a count for each time Defendant used the identity to engage in employment unlawfully. The fact that the statute requires proof that the claim is made intending "to engage unlawfully in employment in the United States" suggests a scheme of making the continuous false claim for that overarching purpose. If the statute of limitations applies to this offense as the defendant suggests, then the government could only prosecute, at most, within five years of the beginning of the concealment. The defendant places undue emphasis on the *beginning* of the concealment in 2013 and ignores the offense conduct as a whole. Nothing in the statute suggests that Congress wanted to limit the scope of this offense in such a manner. In fact, the Sixth Circuit in *Del Percio* supported the opposite conclusion, when it stated that concealment crimes may be of a continuing nature. The defendant in *Del Percio,* a nuclear power plant company, was charged with failing to submit accurate reports to the government and make required plant modifications. *Del Percio*, 870 F.2d at 1097. In support of its argument that the regulatory violations had a "possession" component, the government cited *Jones,* where the court held that possession of a contraband item was a continuing offense because possession was a course of conduct, not an act. *Id* at 1096-97. The court ultimately concluded that the offense at issue was not a continuing offense. *Id*. The court explained when a concealment crime or failure to disclose offense could be considered continuing by stating, "[W]e note that the defendants did not attempt to conceal the alleged violations from the NRC or otherwise preclude the government from discovering the alleged offenses. Under different circumstances, a "possessory" crime might

properly be found to constitute a continuing offense because of the nature of the defendant's actions. In this case, however, the government was aware well prior to the expiration of the limitations period that the defendants might be guilty of criminal violations." *Id* at 1097. On the contrary, in the present case, the government was not aware of Defendant's false claim to engage in employment due to the Defendant's concealment. Title 18 U.S.C. 1015(e) involves the type of concealment crime that is alluded to in *Del Percio*.

### C.  Count 3, Misuse of Social Security Number, is not time barred.

The government recognizes that other Circuits have held that this specific statute is not a continuing offense.  If this offense is not considered a continuing offense, then the government agrees that the statute of limitations has tolled.

For similar reasons submitted for Count 2, the conduct charged in Count 3 "endures beyond the initial illegal act" as the Defendant concealed his true identity, fraudulently used the social security number of a U.S. citizen and continued to do so for nearly twelve years. Here, Defendant received payment, due to his misuse of the victim's social security number, twice a month. Thus, he continued to misuse the social security number twice a month rather than one time in 2013 as the defense argues. (Doc. 14, Defendant's Motion to Dismiss the Indictment; PageID 44).  This puts the end of his criminal offense conduct, and the start of the five-year statute of limitations, at the time of receiving his last paycheck.  It is that course of conduct, like in other continuing offenses, that distinguishes Title 42 U.S.C. § 408(a)(7)(B) from offense that are not continuing. His course of conduct did not stop. And neither did the "evil"—social security fraud and identity theft.

For reference, courts have consistently found violations of other subsections of Title 42 Section 408, specifically, Title 42 U.S.C. § 408(a)(4), to be a continuing offense. *See United States*

*v. Payne*, 978 F.2d 1177, 1180 (10th Cir. 1992). Section 408(a)(4) covers fraud related to the concealment or failure to disclose an event affecting benefits.

### D. Count 4, Aggravated Identity Theft, is a continuing offense predicated on Counts 2 and/or 3 qualifying as continuing offenses.

As Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) requires a predicate offense, it reasons that, it is a continuing offense when it is predicated on a continuing offense. Thus, if Count 2 and/or Count 3 are not time barred by the statute of limitations, neither is Count 4. If Count 3 is found to not be a continuing offense and time barred, Count 2 still serves as a predicate offense for Count 4.

### III.    CONCLUSION

Counts 2 and 4 are continuing offenses and are not time barred. Further, due to Defendant's concealment, the statute of limitations was tolled until August 2025. If the Court determines Count 3 is not a continuing offense, the government concedes that Count 3 should be dismissed. The United States therefore asks this Court to deny Defendant's motion as to Counts 2 and 4, and defers to the Court's determination as to Count 3.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:    */s/ Kristen Rolph*
Kristen Rolph (MI: P75375)
Assistant United States Attorney
United States Court House
801 W Superior Ave, Suite 400
Cleveland, OH 44113
(216) 622-3735
(216) 522-2403 (facsimile06)
Kristen.Rolph@usdoj.gov